UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| RICHARD DEAN MEARS, | ) | CASE NO. 4:07 CV 2508 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| J.T. SHARTLE, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

On August 20, 2007, plaintiff pro se filed this Bivens[1] action against Elkton Federal Correctional Institution ("FCI-Elkton") Warden J.T. Shartle.  In the complaint, plaintiff alleges he has not been provided with adequate storage space for his legal documents which could lead to denial of access to the courts.  He seeks an order from this court requiring the defendant to provide him with additional storage space.

Mr. Mears filed a Motion to Amend Complaint on August 30, 2007.[2]  In the

---

[1]  Bivens v. Six Unknown Agents, 403 U.S. 383 (1971).

[2]  Although Mr. Mears refers to the second pleading as an Amended Complaint, it is clear from its content that he intends for the new pleading to supplement rather than amend and supercede his original pleading.  The Court will therefore liberally construe it as a supplemental complaint.

Amended Complaint, Mr. Mears contends that the prison plans to make room for six additional inmates to be added to his housing unit.  He asserts that this will violate Bureau of Prisons's square footage per inmate requirements.  He seeks an order from the court enjoining the addition of the six additional beds.

## Background

Mr. Mears contends that on August 1, 2007, his correctional counselor informed inmates in his unit that an inspection of living quarters would be conducted "to determine which inmates possessed gray legal box containers."  (Compl. at 1.)  At the time of the inspection, the inmate was required to demonstrate that the material was pertinent to a pending case.  If such a demonstration could not be made, the materials would be forfeited or shipped to the prisoner's home.

When Mr. Mears's cell was inspected, he attempted to demonstrate that he had several pending matters.  He indicates he was summoned to the conference room on August 14, 2007 and was told to bring his gray legal box.  He states that because of the volume of material he had collected, he required a dolly to bring his materials to the conference room.  He informed his counselor that an inmate who had been released or transferred left his box in the unit, and he had placed his name and prison number on the box with black magic marker.  He was told he would have to return his second gray container and that he would not be given another one.  He claims he was given the option of placing his additional legal documents in his personal storage container or mailing some of them out of the institution.  Neither of these options was acceptable to Mr. Mears. He claims that he was then forced to leave his legal materials under his bed, which he claims leaves them vulnerable to theft or destruction.  Mr. Mears claims that other federal institutions allow

2

prisoners to retain multiple containers.  He requests an order from this court requiring the prison to provide multiple storage boxes for his use claiming that his right of access to the courts could be violated if he cannot keep protect his legal documents.

Mr. Mears also contends that up to six inmates could be added to his housing unit. He claims his unit manager conducted a meeting with inmates on August 15, 2007.  Inmates were informed that six additional beds were going to be added to his housing unit.  Mr. Mears indicates that his unit is comprised of two rows of three man cubicles.  The announcement revealed plans to add one additional cubicle to each row.  He expresses concern that the potential addition of these six additional inmates will violate Bureau of Prison square footage and toilet facility requirements per inmate.  He notes an article in the Richmond Times Dispatch reporting that an antibiotic resistant form staphylococcus bacteria has begun to spread among sports teams, and prisons.  He claims he is concerned with the potential problems which could develop if any of these six inmates is added to his unit.

### Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[3]  Neitzke v.

---

[3]    An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute.  McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir.
(continued...)

Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).  For the reasons stated below, this action is dismissed pursuant to §1915(e).

### Access to the Courts

As an initial matter, Mr. Mears claims that the retrieval of the second gray box from his cell could result in a denial of access to the courts.  To state a claim for denial of access to the courts, Mr. Mears must demonstrate he suffered an actual injury to a legal claim as a result of this prison's policy.  Lewis v. Casey, 518 U.S. 343, 351 (1996).  The injury requirement is not satisfied by just any type of frustrated legal claim.  Id.  A prison official may be held liable for the deprivation of this First Amendment right only to the extent that his or her actions actively prevented a prisoner from pursuing or caused the rejection of a specific non-frivolous direct appeal, habeas corpus application, or civil rights action.  Id.; Hadix v. Johnson, 182 F.3d 400, 405 (6th Cir. 1999).  "Impairment of any other litigating capacity is simply one of the incidental, and perfectly constitutional, consequences of conviction and incarceration."[4]  Id. at 355.

Mr. Mears fails to allege that he has suffered any injury as a result of the prison's policy.  He claims he has been deprived of a second gray storage box, which he admits he confiscated without permission after another inmate left the institution.  He states that he is

---

(...continued)
1985).

[4]    The Supreme Court stressed that the First Amendment does not guarantee prisoners the ability to transform themselves into "litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."  Lewis, 518 U.S. at 355.

4

currently storing his excess paperwork under his bed, although he was given the option of placing his work in his personal storage locker or mailing it home.  He claims that his documents could be stolen or damaged in their current location.  He provides no allegation that the actions of the warden prevented him from filing or caused the rejection of a specific, non-frivolous direct appeal, habeas corpus petition or civil rights action.  See Hadix, 182 F.3d at 405.  Absent this type of allegation, plaintiff has failed to state a claim for denial of access to the courts.

### Prison Conditions

In addition, Mr. Mears alleges that the prison's intention to add six inmate beds to each unit would violate Bureau of Prisons policy regarding square footage and toilet facility requirements per inmate.  He states he is also concerned about potential problems with evacuating the building in the event of an emergency.  Mr. Mears does not indicate the particular legal theory upon which this claim is based.  Because no other plausible claim is suggested on the face of the pleading, the court liberally construes this as arising under the Eighth Amendment.

Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment.  A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred.  Id..  Seriousness is measured in response to "contemporary standards of decency."  Hudson v. McMilian, 503 U.S. 1,8 (1992).  Routine discomforts of prison life do not suffice.  Id.  Only deliberate indifference to serious medical needs or extreme deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment.

Id. at 9.  Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind.  Id.  A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

As an initial inquiry, plaintiff fails to establish the objective component of his claim. The Eighth Amendment affords protection against actual conditions of confinement which present immediate health threats, but not against those which cause mere discomfort or inconvenience. Hudson, 503 U.S. at 9-10 (requiring extreme or grave deprivation).  An inmate "cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988); see Thaddeus-X v. Blatter, 175 F.3d 378, 405 (6th Cir. 1999).  Contending that the prison would be in violation of Bureau of Prison policy if it proceeds with its expansion plan, alone, does not violate the Eighth Amendment.  An agency has no constitutional obligation to follow all of its procedures; such a system would result in the constitutionalizing of every rule, and would not be administrable.  see Levine v. Torvik, 986 F.2d 1506, 1515 (6th Cir. 1993). The actual conditions of confinement that would result when the change is made would be the focal point for an Eighth Amendment inquiry.  The Amended Complaint contains no suggestion of a present condition of confinement which deprives Mr. Mears of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e).  The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken

6

in good faith.[5]

       IT IS SO ORDERED.


Date: November 28, 2007           S/John R. Adams          
                                            JOHN R. ADAMS
                                            UNITED STATES DISTRICT JUDGE

---

[5]    28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.

7